UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH MEDEIROS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 19-11079-LTS |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON MOTIONS TO AFFIRM AND
REVERSE DECISION OF COMMISSIONER OF SOCIAL SECURITY

August 10, 2020

SOROKIN, J.

Joseph Medeiros seeks reversal and remand of a decision by Andrew M. Saul, the

Commissioner of Social Security ("Commissioner"), to deny his application for Supplemental

Security Income ("SSI"). For the following reasons, Medeiros's Motion for Order Reversing the

Decision of the Commissioner (Doc. No. 18) is DENIED, and the Motion to Affirm the Decision

of the Commissioner (Doc. No. 24) is ALLOWED.

I.   BACKGROUND

A.   Procedural History

Medeiros applied for SSI on July 17, 2015. A.R. at 200.[2] His initial application was

denied by the Commissioner on August 31, 2015. Id. at 97. Upon reconsideration, the

---

[1] When this action was initiated the defendant was listed as the then-acting Commissioner of
Social Security, Nancy A. Berryhill. Pursuant to Fed. R. Civ. P. 25(d), the name of the current
Commissioner of Social Security has been substituted.

[2] Citations to "A.R." are to the administrative record, which appears in the docket at number 15.
The page numbers refer to those page numbers given by the Agency located in the bottom right
corner of each page.

Commissioner determined on December 8, 2015 that the denial of SSI was appropriate. Id. at 103. Subsequently, Medeiros requested that his case be heard before an administrative law judge ("ALJ"). Id. at 106.

After an initial hearing on June 23, 2017, the ALJ continued the hearing so Medeiros could obtain consultative medical exams after which a final hearing before the ALJ was held on August 14, 2018. Id. at 29-65, 70. This hearing, at which Medeiros was represented by counsel, included testimony by Medeiros and a vocational expert ("VE"). Id. at 29-65. The ALJ, after reviewing the record, found that Medeiros was not disabled. Id. at 12-23.

Medeiros sought review of his case by the Appeals Council. Id. at 194-97.  In a letter dated March 5, 2019, the Appeals Council declined to hear his appeal. Id. at 1-3. Pursuant to 42 U.S.C. § 405(g), Medeiros initiated this action within sixty days of receiving the Appeals Council's letter, on May 9, 2019, seeking this Court's review of the Commissioner's decision. Doc. No. 1; see A.R. at 2 (explaining the Appeals Council assumes recipients receive its letters five days after the date on the letter).

B.  Medeiros's Medical History

Medeiros's initial application for SSI was spurred by back injuries sustained during a car accident on March 18, 2015. A.R. at 49, 232. Two days after the accident, Medeiros presented to an emergency room and was diagnosed with a lower back strain. Id. at 311-12. Medeiros's pain did not subside during the next few days; he began to experience pain and numbness in his right leg, so he sought further medical treatment on April 1, 2015. Id. at 328. At this visit, the treating physician determined that Medeiros had no spinal fractures or dislocations but did find disc narrowing in Medeiros's lower back. Id. at 330. This diagnosis was subsequently supported by Medeiros's primary care physician, Dr. Brian Cilley. Id. at 321. Given these medical findings,

2

Medeiros underwent magnetic resonance imaging ("MRI") on July 11, 2015. Id. at 322-23. The MRI revealed that, indeed, a disc in Medeiros's lower back was extruding and making contact with a nerve root. Id. Nonsurgical treatments such as physical therapy, non-steroidal anti-inflammatory drugs, and chiropractic visits did nothing to relieve his symptoms. Id. at 384. Medeiros then consulted with Dr. Mathew Philips, a spinal surgeon, who recommended surgical treatment to relieve the pain. Id. at 348. Between this consultation and the surgery, Dr. Subbiah Doraiswami completed a residual functional capacity ("RFC") assessment which stated that Medeiros had the ability to stoop and kneel without limitation, and had the ability to stand and walk for six hours per work day. Id. at 77.

 Medeiros underwent a microdiscectomy to repair the extruding disc on September 9, 2015. Id. at 325. The surgery successfully relieved some of Medeiros's pain, and the physician assistant who examined Medeiros at his post-operative check-up found that his back was straight with a good range of motion and that his gait was normal. Id. at 349. A subsequent post-operative MRI found no evidence of residual disc bulging, but it did reveal that Medeiros's spinal endplates, the cushioning between vertebrae, were degenerative. Id. at 351.

Although Medeiros reported the pain in his back and right leg improved, he told Dr. Philips on October 13, 2015 that pain in his left leg was getting worse. Id. at 370. Dr. Philips ordered another MRI, but it revealed no new condition to explain the worsening pain. Id. at 371. To further investigate the cause of Medeiros's symptoms, Dr. Philips's physician assistant ordered an electromyography study ("EMG"). Id. at 374.

On March 17, 2016, Medeiros met with Dr. Ian Rivera-Colon for a second opinion. Id. at 427-30. Dr. Rivera-Colon performed a physical exam at which Medeiros failed two tests used to identify lower back pain: a Kemp's test and a straight leg test. Id. at 429. Based on his findings,

Dr. Rivera-Colon agreed that Medeiros should undergo an EMG. Id. at 430. Medeiros saw Dr. Rivera-Colon on June 21, 2016, after he underwent the procedure, and the doctor explained that the EMG showed no lower extremity abnormalities. Id. at 434. At a follow up with a nurse practitioner assisting Dr. Rivera-Colon, Medeiros was offered a spinal steroid injection, which was administered on August 22, 2016. Id. at 437, 440. Although the physical exam performed after the injection was normal except for positive Kemp's and straight leg tests, Medeiros reported the injection did little to relieve his pain. Id. at 439-42, 446.

Through the rest of 2016 and all of 2017, Medeiros's pain neither improved nor worsened. E.g., id. at 466-69, 503-06, 508-10, 511-14. On occasion, Medeiros sought medical attention for conditions unrelated to his back pain, including treatment for gastroesophageal reflux disease ("GERD"). Id. at 409-13. On May 17, 2018, Dr. Mamdouh Riad, an agency-contracted doctor, performed a consultative exam on Medeiros.[3] Id. at 495-97. Dr. Riad found that Medeiros had a normal gait, pain in his lower spine when moving, and a positive straight leg test. Id. at 496. Although Dr. Riad observed that Medeiros was "unable to bend over due to pain," he also concluded that Medeiros's "subjective complaints cannot be [corroborated] with the medical records" available to him. Id.

On June 13, 2018, Dr. Sol Pittenger conducted a consultative psychological evaluation of Medeiros. Id. at 499-501. Dr. Pittenger opined that Medeiros met the diagnostic criteria for adjustment disorder with depressed mood, but that otherwise Medeiros's mental faculties, including memory, concentration, abstraction, judgment, and speech, were normal. Id. at 501.

---

[3] A consultative exam is a medical evaluation performed by a doctor provided by the Social Security Administration in connection with a person's application for disability benefits.

C.   Administrative Hearing before the ALJ

At the ALJ hearing, Medeiros's testimony mostly focused on his mental condition and limitations that resulted from his lower back pain. Medeiros testified that he was taking medications for pain, for depression and anxiety, and for GERD-related symptoms. Id. at 40. He said that "ever since the accident [he's] had a lot of depression and anxiety," and that his condition makes him "very anxious [and] upset." Id. at 41-42. The ALJ asked whether Medeiros held a position in which he worked forty hours per week in the last fifteen years, and Medeiros said he had not. Id. at 35

The ALJ then asked a series of questions about Medeiros's physical capabilities. Id. at 42-46. Medeiros testified that he could only walk half of the length of a football field before he would have to stop due to pain; that he cannot sit for longer than forty-five minutes without having to stand; and that he cannot lift a gallon of milk without making his pain worse. Id. at 42-44. Medeiros further testified that he could not bend at the waist and touch his toes, nor could he dress himself in the morning without help from others. Id. at 45, 46. Medeiros also explained that during the day he mostly rests his back, that his sleep is interrupted by his pain several times each night, and that no therapy or chiropractic treatments are effective in managing his symptoms. Id. at 49, 50, 57. Finally, Medeiros identified his treating physicians, explained Dr. Cilley had been his primary care physician for years, and said he could not think of any job he could do on a normal full-time basis. Id. at 53, 56.

The VE began her testimony by affirming it would be consistent with the Dictionary of Occupational Titles ("DOT"). Id. at 57.  The ALJ then posed a hypothetical, asking if jobs existed in the economy for a claimant of the same age, education, and work experience as

Medeiros who could perform light work with occasional stooping and kneeling.[4] Id. at 58. The VE said there were such jobs, proffering as examples cafeteria attendant, bench assembler, and cashier. Id.

Medeiros's attorney then asked the VE two additional hypotheticals involving additional limitations. Id. at 58-60. Both proposed a claimant of the same age, education, and work experience as Medeiros, limited to picking up ten pounds, standing or walking two hours out of an eight-hour day, with no stooping or kneeling. Id. at 58-59. The VE testified that were no jobs for such a claimant, saying that "[all jobs] require occasional" stooping and kneeling. Id. at 59.

Medeiros's attorney then questioned the VE's professional experience and her reasons for appearing via telephone. Id. at 61-64. The VE testified she had last assisted someone in gaining employment in the three jobs she had identified between five and ten years earlier. Id. at 60. She later said it had been two years since she had placed anyone into any job. Id. at 64. When Medeiros's attorney asked "what extraordinary circumstances prevented [her] from [testifying] in person," the ALJ interceded and said that "[v]ocational experts [testify] from all over the country, [and] because the effort is now to process, efficiently and timely, cases in the region. . . extraordinary circumstances. . . [aren't] relevant." Id. at 60-61.

D.  Administrative Law Judge Decision

The ALJ issued his decision on September 19, 2018. Id. at 12-23. The ALJ's decision analyzed each of the five steps used to determine whether a claimant is disabled for the purposes

---

[4] Light work is defined as "[work involving] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds...[A] job is in this category when it requires a good deal of walking or standing . . .To be capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

of SSI.[5] 20 C.F.R. § 416.920(a)(4); A.R. at 12-23. At step one, the ALJ decided that Medeiros

had not engaged in substantial gainful activity since June 29, 2015. A.R. at 17. At step two, the

ALJ found that Medeiros has a severe impairment: degenerative disc disease. A.R. at 17. At step

three, the ALJ determined that Medeiros's severe impairment was not one which would require

the Commissioner to deem Medeiros disabled, because Medeiros did not suffer from any motor

loss accompanied by sensory or reflex loss. 20 C.F.R. Part 404, Subpart P, Appendix 1; A.R. at

20. At step four, the ALJ found that Medeiros was capable of performing "light work . . . that

does not require more than occasional stooping or kneeling." A.R. at 21. In formulating

Medeiros's RFC, the ALJ explicitly discussed RFC assessments submitted by three separate

physicians. Id. at 22. He relied mostly on one provided by Dr. Phillis Sandell, an agency-

provided physician, on December 7, 2015.  Id. Dr. Sandell opined that Medeiros was capable of

occasionally lifting twenty pounds and frequently lifting ten pounds; standing and/or walking for

six hours in an eight-hour work day; sitting for six hours in an eight-hour work day; and only

occasionally stooping. Id. at 22. The ALJ also discussed an assessment by Dr. Cilley on August

9, 2018, who opined that Medeiros was capable of occasionally and frequently lifting only ten

pounds; standing and/or walking less than two hours in an eight-hour work day; sitting less than

---

[5] In order to determine if a claimant is disabled for the purposes of SSI, an ALJ proceeds through
a five-step analytical process. 20 C.F.R. § 416.920(a)(4)(i)-(iv). The ALJ moves through the
steps sequentially as long as the determination of the proceeding step does not render a final
determination of disabled or not disabled. Id. The steps are as follows: (1) the ALJ determines
whether the claimant is doing "substantial gainful activity"; if no, then (2) the ALJ determines if
the claimant has "severe medically determinable physical or mental impairments that last at least
twelve continuous months, pursuant to 20 C.F.R. § 416.909; if yes, then (3) the ALJ must
determine if the severity of the physical impairment meets regulatorily defined impairments that
would lead to an automatic determination of "disabled"; if no, then (4) the ALJ determines the
claimant's residual functional capacity and whether the claimant can perform his previous
relevant work; if no, then (5) the ALJ determines whether the claimant, given his age, education,
and work experience, can "make an adjustment to other work." 20 C.F.R. § 416.909; 20 C.F.R.
§ 416.920(a)(4); 20 C.F.R. § 416.960(b).

six hours in an eight-hour work day; and could never stoop or kneel. Id. at 537, 538. The last RFC assessment was provided by Dr. Parakrama Ananta after examining Medeiros on September 18, 2017. Id. at 511-16. Dr. Ananta opined that Medeiros was capable of lifting up to ten pounds, one hour of continuous walking or standing, and one hour of continuous sitting, but incapable of stooping or kneeling. Id. at 515. The ALJ did not explicitly discuss Dr. Doraiswami's RFC assessment in formulating Medeiros's RFC. Id. at 21-22.

The primary reasons the ALJ cited for affording more weight to Dr. Sandell's RFC assessment were the depth of Dr. Sandell's experience in making such evaluations and the fact that Dr. Sandell's RFC assessment was "consistent with . . . significant evidence of record." Id. at 22. The ALJ gave less weight to the assessments of Drs. Ananta and Cilley, concluding that "the evidence does not support these assessments." Id. Specifically, the ALJ pointed to Dr. Parakrama Ananta's determination that Medeiros's gait was normal and that he had normal strength in his lower extremities. Id.

Having determined Medeiros's RFC, the ALJ found that Medeiros had no past relevant work, then moved on to step five of the analysis. Id. Based on the testimony of the VE, the ALJ determined that there were jobs in the economy for someone of Medeiros's age, education, work experience, and RFC. Id. at 23. Therefore, the ALJ found that Medeiros was not disabled. Id.

II.    LEGAL STANDARD

When actions are brought seeking review of the Commissioner's decision to deny benefits, the Court is authorized to enter a judgement "affirming, denying, or reversing the decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). However, the decision of the Commissioner is final when determinations of fact are supported by substantial evidence and

the law is applied correctly. Id. This standard of review "is more deferential than it may sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 398, 401 (1971). The substantial evidence standard "does not approach the preponderance-of-evidence standard" and "is notoriously difficult to overcome on . . . review." Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003). Consequently, the Court will "uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 618, 622 (1st Cir. 1981); accord Bath Iron Works Corp., 336 F.3d at 56 ("[W]e will accept the findings and inferences drawn from the ALJ, whatever they may be, unless they are irrational."). This standard of review respects the expertise of the Social Security Administration in balancing the evidence presented to it during its proceedings. Cf. Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (explaining that the deference afforded by substantial evidence review "gives proper respect to the expertise of the administrative tribunal").

When multiple inferences and conclusions could be drawn from the record, the Court will affirm decisions made by the Commissioner if they are supported by substantial evidence, even if the Court would come to a different conclusion if it were reviewing the case de novo. Sprague v. Dir. of Worker's Comp. Programs, United States Dep't of Labor, 688 F.2d 862, 866 (1st Cir. 1982). Only when the Commissioner's conclusions "ignore evidence, misapply[] the law, or judge[] matters entrusted to experts" are the conclusions not supported by substantial evidence. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Furthermore, the ALJ typically evaluates medical opinions that come from both the claimant's principal treating physician, i.e., the medical provider with whom the claimant had "an ongoing treatment relationship," and from other physicians who might or might not have actually examined or treated the claimant.[6] 20 C.F.R. § 416.927. Generally, the opinion of a treating physician is given controlling weight in the Commissioner's decision, unless it is "inconsistent with the other substantial evidence in [the] case record." Id. § 416.927(c)(2); accord Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F. App'x 11, 12-13 (1st Cir. 2001) (per curiam).

In instances where the treating physician's opinion is not controlling, the ALJ must assess the weight to give to the treating physician's opinion, as well as the other medical opinions, by looking to a number of factors, including how long and how often the physician treated the claimant; the "nature and extent of the treatment relationship"; whether the opinion is supported by actual medical evidence; whether the opinion is consistent with overall record; and the extent to which the opinion comes from a specialist in the practice area. 20 C.F.R. § 416.927(c). When a treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" why, though they need not give an exhaustive list of reasons. Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015); 20 C.F.R. § 416.927(c)(2). The ALJ must "state [the reasons] with particularity." Henderson v. Saul, No. 19-cv-11012-PBS, 2020 WL 1190821, at *6 (D. Mass. Mar. 12, 2020) (quoting Hidalgo-Rosa v. Colvin, 40 F. Supp. 3d 240, 247 (D.P.R. 2014)). The Court only questions reasons given by the ALJ that are "unpersuasive" or

---

[6] "Medical opinions are statements from acceptable medical sources that reflect judgements about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

"significantly flawed." <u>Lemieux v. Berryhill</u>, 323 F. Supp. 3d 224, 229 (D. Mass. 2018) (quoting

<u>Santana</u>, 15-cv-13232-IT, 2016 WL7428223, at *3 (D. Mass. Dec. 23, 2016)).

III.    <u>DISCUSSION</u>

Medeiros proffers thirteen challenges to the ALJ's decision. Doc. No. 18. Many of these

challenges are waived either because they were not made before the ALJ, <u>Mills v. Apfel</u>, 244

F.3d 1, 8 (1st Cir. 2001), or because they are perfunctory and underdeveloped, <u>United States v.</u>

<u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). The remaining argumentation finds error in the

following: (1) the ALJ's RFC determination; (2) the ALJ's failure to consider Medeiros's past

relevant work; (3) the authority of Appeals Council Officers; and (4) the VE's testimony. Doc.

No. 18.  As explained below, all of Medeiros's challenges fail.

A.    <u>Waived Arguments</u>

The Court first will dispose of Medeiros's waived arguments.[7] It is axiomatic in this

Circuit that litigants waive underdeveloped arguments. <u>Zannino</u>, 895 F.2d at 17. "It is not enough

merely to mention a possible argument in the most skeletal way, leaving the Court to do

counsel's work, create the ossature for the argument, and put flesh and bones on it." <u>Id</u>. A

claimant likewise waives any challenges that were not raised before the Agency. <u>Mills</u>, 244 F.3d

at 8.  Each of Medeiros's waived arguments will be addressed briefly.

First, Medeiros avers that the ALJ erred by failing to fully account for Medeiros's

psychological limitations and his GERD. Doc. No. 18 at 10-11. Yet, during the administrative

proceedings, Medeiros  did not claim that either his mental limitations or GERD substantially

---

[7] The Court carefully reviewed the entire record presented to it. Even if these arguments were not
waived and the Court considered their merits, there is nothing in the record nor in Medeiros's
papers that would support a finding that the Commissioner committed reversible error with
respect to any of the claims addressed in this subsection.

hindered his ability to work. <u>See, e.g.</u> A.R. at 232 (listing in his initial application for SSI "back injury to a car accident" as the only disabling condition); <u>id.</u> at 36 (reflecting statement by Medeiros's attorney to the ALJ that although Medeiros's mental impairments limit him to unskilled work, "this is purely a physical case"). Accordingly, Medeiros has waived challenges arising from alleged GERD-related and psychological limitations. <u>Mills</u>, 244 F.3d at 8; <u>accord</u> <u>Cameron v. Berryhill</u>, 356 F. Supp. 3d 186, 193 (D. Mass 2019).[8]

Second, Medeiros claims that the ALJ erred in asking the VE before, as opposed to after, her testimony whether it would be consistent with the DOT. Doc. No. 18 at 12. This argument is both perfunctory and unpreserved. Medeiros does not cite any legal authority that supports the proposition that this is an error at all, let alone one that would warrant remand. Doc. No. 18 at 12 (citing only a policy interpretation ruling, SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), which does not support Medeiros's challenge). Moreover, Medeiros's attorney failed to object to the ALJ's questioning of the VE during the hearing, asked no questions himself of the VE regarding the DOT, and did not otherwise preserve this challenge at the ALJ hearing. A.R. at 57-64.[9] As such, this argument is waived.

Third, Medeiros summarily contends that a remand is required because his pre-ALJ hearing brief, submitted by his attorney, was not included as an exhibit in the record and, he claims, was therefore not considered as part of ALJ's decision. Doc. No. 18 at 11. But

---

[8] Even if it were not waived, Medeiros's claim would fail on its merits. Medeiros argues here, as he did to the ALJ, that he was mentally limited to unskilled work. Doc. No. 18 at 10. Although the ALJ did not include such a limitation in his RFC, at step five the ALJ cited three jobs proffered by the VE in determining Medeiros was not disabled, each of which was unskilled work. A.R. at 23, 58. Thus, even if the ALJ did not properly account in his RFC for the mental limitations Medeiros identifies, such an error would be harmless. <u>Ward</u>, 211 F.3d at 656.
[9] The Court recognizes that Medeiros raised this issue in the brief submitted to the Appeals Council, A.R. at 305, but this does not remedy his silence on the issue during the ALJ hearing. <u>See</u> <u>Mills</u>, 244 F.3d at 8 (holding arguments not made before the ALJ are waived).

Medeiros's attorney was present at the ALJ hearing and was permitted to question witnesses and argue his theory of the case. A.R. at 35. Medeiros does not identify anything in his pre-hearing brief that he was prevented from raising at the hearing or that the ALJ failed to account for in his decision. Thus, this challenge is waived, Zannino, 895 F.2d at 17, or is harmless in any event.

   B.  Challenge to the RFC

       A majority of Medeiros's remaining arguments challenge the Commissioner's RFC determination by finding fault in the amount of weight the ALJ gave to different medical opinions. Specifically, Medeiros finds error in the weight the ALJ gave to the opinions of: (1) non-treating physicians, (2) physicians who opined Medeiros could not bend, (3) Dr. Cilley, and (4) Dr. Sandell. Doc. No. 18 at 5-9, 13-14.

           1.  *Non-Treating Physicians*

       First, Medeiros contends that the ALJ erred in not expressly discussing the medical opinions of Drs. Doraiswami and Riad. Doc. No. 18 at 5-7. While Medeiros is correct that the ALJ is required to evaluate every medical opinion, 20 C.F.R. § 416.927(c), the ALJ did not fail to weigh the opinions of Drs. Doraiswami and Riad. A.R. at 17, 19. In fact, the ALJ explicitly accounted for both opinions in determining that Medeiros had a severe impairment at step two of the analysis. Id. The ALJ was not required to further discuss this evidence, nor was he obligated to give "good reasons" for not giving more weight to it, since neither of these doctors were treating physicians. 20 C.F.R. § 416.927(c)(2). Reading his decision as a whole, it is clear that the ALJ satisfied his legal obligation to consider all relevant evidence and evaluate every medical opinion, including those of Drs. Doraiswami and Riad.

       Even if the ALJ had erred in failing to reference specifically the two opinions again, remand would not be necessary because both opinions are detrimental to Medeiros's case. See

Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (holding a remand is unnecessary if "it will amount to no more than an empty exercise"). Medeiros does not point to any specific discrepancies between the RFC determined by the ALJ and the opinions of Drs. Doraiswami and Riad, simply stating they "gave opinions that support Mr. Medeiros's disabilities." Doc. No. 18 at 7. Yet, the record does not support Medeiros's assertion. Whereas the ALJ's RFC limited Medeiros to occasional stooping or kneeling, Dr. Doraiswami's assessment included no limitations on stooping or kneeling. Id. at 21, 77. Similarly, although Dr. Riad stated in his consultative examination that Medeiros was "unable to bend over due to pain," he rendered no formal assessment of Medeiros's limitations.  A.R. at 496.  Moreover, he noted that Medeiros's "subjective complaints cannot be [corroborated] with the medical records." Id. Giving the opinions of Drs. Doraiswami and Riad more weight, then, would not help Medeiros. For this reason, a remand would be futile. Ward, 211 F.3d at 656.

### 2.  *Physicians who Opined Medeiros Cannot Bend*

Second, Medeiros argues that the ALJ's RFC determination is not supported by substantial evidence because it did not take into account the opinions of Drs. Riad, Cilley, and Ananta that Medeiros could not bend. Doc. No. 18 at 7-9. Medeiros further asserts that ignoring the opinion of even one of these doctors requires remand, citing Chester v. Callahan, 193 F.3d 10 (1st Cir. 1999) (per curiam). In that case, the First Circuit remanded because the ALJ failed to address *at all* whether the claimant had functional limitations based on the fact the claimant could not bend. Id. at 13. Here, the ALJ directly addressed this alleged limitation, but drew different, permissible inferences than the one urged by Medeiros based on the totality of the medical records, finding Medeiros could occasionally stoop and kneel. A.R. at 21.

Assuming, arguendo, that all three doctors held such an opinion, the ALJ was not bound to accept their opinions; rather, he was obligated to evaluate them in light of the rest of the evidence.[10] 20 C.F.R. § 416.927(d)(2). Indeed, the Commissioner is responsible for weighing all the medical evidence presented to him, drawing inferences from the record based on his own analysis, and using that evidence and those inferences to come to a decision as to the claimant's RFC. Smith v. Berryhill, 370 F. Supp. 3d 282, 288 (D. Mass. 2019).; accord Nguyen, 172 F.3d at 35; 20 C.F.R. § 416.927(d)(2).

In this case, the ALJ did not ignore the medical opinion of any of the three doctors at issue. A.R. at 22. He expressly acknowledged the opinions of Drs. Riad, Cilley, and Ananta, and he explained why he chose to give less weight to Drs. Cilley and Ananta. A.R. at 19. Thus, the ALJ did not ignore this potential limitation—indeed, his RFC includes a limitation related to it, though not one as restrictive as Medeiros suggests was necessary—and there is substantial evidence in the record that supports the ALJ's finding that Medeiros could bend "occasional[ly]." See, e.g. A.R. at 77, 88 (RFC assessments stating Medeiros has no postural limitations or could bend at the waist occasionally).

### 3. *Dr. Cilley*

Medeiros alleges that the ALJ erred by not giving controlling weight to the opinion of his treating physician, Dr. Cilley. Doc. No. 18 at 14. Dr. Cilley's RFC assessment is the most favorable for Medeiros, as it limits his ability to lift in all circumstances to less than ten pounds and states he can never stoop or kneel. A.R. at 537-38. In his decision, the ALJ explained that he did "not give significant weight" to Dr. Cilley's medical opinion because it was not supported by

---

[10] As explained above, Dr. Riad did not formally opine that Medeiros was limited in his ability to stoop and kneel, but rather observed that on one occasion he appeared unable to bend.

the weight of the evidence. A.R. at 22. This challenge fails because the ALJ gave good reasons

for not giving controlling weight to Dr. Cilley's opinion, including citing to other substantial

evidence in the record that contradicts that opinion. Lemieux, 323 F. Supp. 3d at 229; 20 C.F.R.

§ 416.927(c).

In this case, the ALJ specifically pointed out that Dr. Cilley's opinion was contradicted by,

inter alia, Dr. Ananta's physical exam results, which included findings as to both the upper and

lower extremities that undermined Dr. Cilley's limitations on lifting, carrying, standing, and

walking. Id. at 22, 511-16.[11] Since the ALJ is not required to "discuss every piece of evidence in

the record," the reasoning proffered is sufficiently specific to satisfy the requirements of 20

C.F.R. § 416.927(c)(2). Moreover, the Court's review of the record confirms that other physical

exam results, which found Medeiros had a normal gait and normal strength in his lower

extremities, support the ALJ's RFC assessment and his decision not to assign more weight to Dr.

Cilley's opinion.[12] In these circumstances, substantial evidence supports the ALJ's assessment of

Dr. Cilley's opinion.

### 4. *Dr. Sandell*

Medeiros argues that Dr. Sandell's RFC assessment, which the ALJ gives "great weight,"

is flawed, because it is an overly speculative prediction of Medeiros's future capabilities rather

---

[11] The same exam results support the ALJ's decision not to credit Dr. Ananta's RFC assessment, which was similar to Dr. Cilley's but at odds with records of his own observations when examining Medeiros.

[12] There is substantial evidence that contradicts Dr. Cilley's opinion. E.g., A.R. at 349 (observing Medeiros had normal gait and normal range of motion in his back), 380 (observing Medeiros had normal musculoskeletal range of motion and normal muscle tone), 386 (observing Medeiros had full range of motion in his shoulders and upper extremities), 496 (observing Medeiros had normal strength in all extremities), 505 (observing Medeiros had no sensory deficit), 511 (observing Medeiros had normal gait, stance, and motor strength, as well as full range of motion), 513 (observing Medeiros had normal muscle tone in all extremities).

than a contemporaneous assessment of his limitations. A.R. at 22; Doc. No. 18 at 9. Dr. Sandell's

RFC assessment, which was completed on December 7, 2015, stipulates that her opinion is

applicable to Medeiros's expected condition three months after the assessment was completed.

A.R. at 88-89. Dr. Sandell found: "Although [Medeiros's] condition is currently severe, it is

expected to improve and will not result in significant limitations in [his] ability to perform basic

work activities." Id. at 91. Medeiros insists that this statement indicates Dr. Sandell believed

Medeiros was disabled at the time she reviewed his file, and that this opinion is "the only reliable

evidence" the ALJ is permitted to use from Dr. Sandell's assessment. Doc. No. 18 at 9. He is

incorrect for two reasons.

First, Medeiros conflates the designations of "severe" and "disabled." A severe

impairment is a necessary condition to determining a claimant is disabled, but it is not sufficient.

See 20 C.F.R. § 416.920(a)(4) (whether a claimant is disabled depends on the entire five-step

analysis, and whether an impairment is severe is only one determination within that analysis).

Thus, Dr. Sandell stating that Medeiros has a severe impairment is not equivalent to opining that

he is disabled. Even if Dr. Sandell meant to communicate a belief that Medeiros was disabled

when she used the term "severe," the ALJ would not have been bound by her belief, because

determinations of disability are left solely to the Commissioner. 20 C.F.R. § 416.927(d)(1);

accord O'Connor v. Berryhill, No. 3:18-cv-30013-KAR, 2019 WL 1430119, at *16 (D. Mass.

Mar. 29, 2019).

Second, Medeiros's assertion that the ALJ cannot rely on Dr. Sandell's RFC evaluation

because it was predictive is mistaken. Doc. No. 18 at 9. The value of a medical opinion is a

function of the factors laid out in the agency regulations. 20 C.F.R. § 416.927(c)(1)-(6).

Medeiros cites no legal authority that suggests a medical opinion is per se unreliable or

speculative simply because a doctor gives a professional prediction grounded in physiological evidence. A predictive medical opinion that is supported by the rest of the record is no different than any other medical opinion, especially considering that determining whether a claimant is disabled can be a future-oriented endeavor. See 20 C.F.R. § 416.909 (stating a claimant's impairment, at a minimum, "must be *expected* to last for [twelve continuous months]") (emphasis added). Ultimately, the ALJ's reliance on Dr. Sandell's opinion is acceptable so long as it is supported by the rest of the record. 20 C.F.R. § 416.927(c)(4). Here, every physical exam that Medeiros underwent after Dr. Sandell completed her assessment came back with mostly normal results, including in lower extremity strength and functioning, thereby supporting Dr. Sandell's opinion. E.g., A.R. at 427-30, 378-81, 443-446, 495-97. Considering Dr. Sandell's assessment in the context of the rest of the record, substantial evidence supports the ALJ's reliance on her opinion.

In sum, Medeiros has identified no errors in the ALJ's weighing of medical evidence or his RFC assessment that merit remand.

C. Appointments Clause Challenge

Next, Medeiros challenges the constitutionality of the decision of the Appeals Officer ("AO") in denying his appeal to the Appeals Council. Doc. No. 18, at 15-16. Specifically, Medeiros contends that AOs are not legally authorized to make decisions as to whether appeals get heard by the Appeals Council because AOs are "unconstitutionally appointed" officers of the United States. Id. at 16. Medeiros argues only ALJs and administrative appeals judges ("AAJs") are authorized to make such decisions because they are duly appointed in accordance with the Appointments Clause. Doc. No. 18, at 15-16; see generally Lucia v. SEC, 138 S. Ct. 2044 (2018) (holding that ALJs are subject to the Appointments Clause). He is incorrect.

Article II of the Constitution requires that "officers of the United States" be appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2. The First Circuit has elucidated a three-prong test to determine whether an agent is an officer of the United States, as opposed to simply an employee of an agency. Aurelius Investment, LLC. v. Puerto Rico, 915 F.3d 838, 856 (1st Cir. 2019). The three requirements are: "(1) the appointee occupies a 'continuing' position established by federal law; (2) the appointee 'exercis[es] significant authority'; and (3) the significant authority is exercised 'pursuant to the laws of the United States.'" Id. (quoting Lucia, 138 S. Ct. at 2051; Freytag v. Comm'n of Internal Revenue, 501 U.S. 868, 881 (1991); Buckley v. Valeo, 424 U.S. 1, 126 (1976)).

Another session of this Court has recently applied this test to AOs. Rosario Mercado v. Saul, No. 19-cv-11172-WGY, 2020 WL 2735980, at *9 (D. Mass. May 26, 2020). Judge Young held that the position of AO satisfied the Aurelius test's first and third prongs, because the position is continuous, created by federal law, and derives its authority from federal law. Id. at *9. However, Judge Young held that AOs did not satisfy the second requirement, because they "lack significant discretionary authority." Id. Specifically, AOs cannot "sign off on affirmations or remands," never make decisions on appeal individually, and their denials of appeals are subject to review by other AOs and AAJs. Id. In other words, "[AOs] make limited and highly supervised decisions," and clearly do not exercise the same authority as an ALJ. Id. Indeed, ALJs have the authority to unilaterally rule on motions, impose sanctions on parties, grant protective motions in discovery, and exclude evidence. 20 C.F.R. § 498.207(d)(1), 498.208(b)(3), 498.213(d), 498.214(a); see also Lucia, 138 S. Ct. at 2053 (explaining that ALJs have "nearly all the tools of federal trial judges").

This Court finds Judge Young's analysis persuasive. Given the supervised nature of the position, AOs do not "exercise significant authority" as the second prong of the <u>Aurelius</u> test requires. <u>Aurelius</u>, 915 F.3d at 856. Thus, they are not officers of the United States and need not be appointed pursuant to the Appointments Clause. This conclusion is fatal to Medeiros's challenge to the AO's role in his case.

D. <u>Other Challenges</u>

1. *Past Relevant Work*

Medeiros contends that the ALJ erred in his determination that Medeiros did not have any past relevant work, because the ALJ failed to account for part-time work. Doc. No. 18 at 10. During the ALJ hearing, when Medeiros said he had not held a job that involved working forty hours per week within the past fifteen years, the ALJ responded, "all right, no past relevant work." A.R. at 35. Even assuming this was an error of law, <u>see</u> <u>Spalke v. Berryhill,</u> No. 16-cv-10856-TSH, 2016 WL 10720160, at *13 (D. Mass. May 10, 2016) (affirming that part-time work can be past relevant work), a remand is not necessary.

Medeiros fails to cite any law that indicates this error would require a remand per se, nor does he elaborate on how the outcome of the five-step analysis would have been different if the ALJ had found that there was past relevant work. Doc. No. 18 at 10. Indeed, the Commissioner correctly points out that the issue of past relevant work was resolved in favor of Medeiros. Doc. No. 25 at 30. The outcome of Medeiros's case never turned on whether he had past relevant work, because even if he did and was unable to perform it, the ALJ's step-five conclusion that there were jobs in the economy for Medeiros would have remained unchanged. <u>See</u> 20 C.F.R. § 416.920 (mere existence of past relevant work does not affect step five of the analysis). Since these jobs existed (a finding which Medeiros challenges only indirectly, via attacks on the VE's

qualifications discussed below), the unfavorable outcome of Medeiros's case was inevitable, whether the ALJ determined Medeiros had past relevant work or not.

2.   *Challenges to VE Testimony*

Lastly, Medeiros presents two challenges that find fault in the VE's testimony. Doc. No. 18 at 12-13. First, Medeiros asserts that the VE was not qualified to render an opinion in this case because she was not actively involved in placing individuals into jobs for the two years preceding the ALJ hearing. Doc. No. 18 at 12. Medeiros relies solely on a non-binding Social Security VE handbook to support this challenge to the VE's qualifications. Id. However, the VE handbook is not a source of law that binds this court, does not bestow upon claimants any judicially enforceable rights, and in any event does not support Medeiros's position. Soc. Sec. Admin.: Vocational Expert Handbook at 8 (2020), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf (last visited July 15, 2020). As the Commissioner points out, there is no requirement that a VE be actively involved in placing people into work; rather, the handbook states an "ideal" VE would have some "involvement in or knowledge of vocational counseling." Id.; Doc. No. 25 at 26. Here, the VE had over thirty years of experience in the field of vocational counseling, a fact which Medeiros does not challenge.  In these circumstances, Medeiros has not advanced a colorable, let alone meritorious, challenge to the VE's qualifications.

Second, Medeiros contends the VE was improperly allowed to testify via telephone, where no extraordinary circumstances prevented her in-person testimony. Doc. No. 18 at 13. Medeiros argues that 20 C.F.R. § 416.1436(c)(2) allows VEs to testify telephonically only under

"extraordinary circumstances."[13] Doc. No. 18 at 13. The regulation he cites, however, supports the opposite proposition, evidencing the Commissioner's preference for VE testimony by telephone. See 20 C.F.R. § 416.1436(c)(4) ("[The agency] will generally direct any person [the agency] call[s] as a witness . . . including a medical expert or a vocational expert, to appear by telephone or by video teleconferencing.") Given the plain language of the regulation, as well as the fact that Medeiros offers no argument whatsoever as to how this alleged error harmed him, this final argument fails.

IV.   CONCLUSION

For the foregoing reasons, Medeiros's Motion for Order Reversing the Decision of the Commissioner (Doc. No. 18) is DENIED, and the Commissioner's Motion to Affirm his Decision (Doc. No. 24) is ALLOWED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[13] Medeiros cites to 20 C.F.R. § 404.936, which governs Disability Insurance Benefits.  The Court considers the challenge pursuant to the parallel regulation governing SSI, the type of benefits at issue here.